UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 04-20872-CR-GRAHAM/GARBER

UNITED STATES OF AMERICA,      )
                               )
           Plaintiff,          )
                               )
v.                             )
                               )
KENNETH RAY WEST               )
a/k/a CRISTIAN NOEL IGLESIAS,  )
                               )
           Defendant.          )
_____)

## UNITED STATES' RESPONSE TO DEFENDANT WEST'S MOTION FOR DOWNWARD DEPARTURE

I. BACKGROUND

     1.   The defendant pleaded guilty on March 11, 2005, to one count of threatening to use a weapon of mass destruction outside the United States. The defendant is currently incarcerated.

     2.   This case was originally scheduled for sentencing on May 20, 2005.

     3.   On or about May 5, 2005, the defendant filed a motion for downward departure due to the alleged diminished mental capacity of the defendant pursuant to United States Sentencing Guideline § 5K2.13 (U.S.S.G. § 5K2.13). In support of his motion the defendant relied on a mental health evaluation conducted by defense consulting psychologist Jethro Toomer

1

(hereinafter referred to as Report of Toomer - attachment A). In addition on or about May 5, 2005, the defendant filed a sentencing memorandum.

4.  On or about ay 11, 2005, the government filed an unopposed motion for a continuance in order to allow the government to procure a second mental examination and the court granted a continuance until May 31, 2005.

5.  On or about May 12, 2005, the government filed an unopposed motion for an order that (a) a second mental evaluation of the defendant be undertaken; (b) a report thereon be filed with the Court, with copies furnished to counsel for the defendant, counsel for the government, and the United States Probation Office; (c) the Warden of the Federal Detention Center where the defendant is currently being detained shall admit the expert and his/her associate(s), and provide medical or psychological records of the defendant for purposes of the mental evaluation and (d) the government shall respond to the defendant's sentencing memorandum and motion for downward departure upon receiving and reviewing the report of the second mental evaluation of the defendant. The court granted that motion and issued a corresponding order on or about May 12, 2005.

6.  On Friday, May 27, 2005, the government received the written report of the second evaluation by government consulting psychologist David Shapiro (hereinafter referred to as Report of

Shapiro - attachment B) and forwarded it to Defendant's counsel on May 27, 2005.

7.   On Tuesday, May 31, 2005, the government filed this response to the defendant's motion for downward departure.

## II.   DISCUSSION

In his motion for downward departure the defendant requests that he be granted a downward departure pursuant to U.S.S.G. § 5K2.13.  At the time that the defendant committed the crime U.S.S.G. § 5K21.3 read as follows:

> A sentence below the applicable guideline range may be warranted if (1) the defendant committed the offense while suffering from a significantly reduced mental capacity. However, the court may not depart below the applicable guideline range if (1) the significantly reduced mental capacity was caused by the voluntary use of drugs or other intoxicants; (2) the facts and circumstances of the defendant's offense indicate a need to protect the public because the offense involved actual violence or a serious threat of violence; or (3) the defendant's criminal history indicates a need to incarcerate the defendant to protect the public.  If a departure is warranted under this policy statement, the extent of the departure should reflect the extent to which the reduced mental capacity contributed to the commission of the offense.

In short, U.S.S. G § 5K2.13 may permit a downward departure when a defendant commits an offense while suffering from a "significantly reduced mental capacity" and the other requirements of the statute are met.  The defendant has the burden of proving that he is entitled to such departure. See *US. v. Cantu*, 12 F.3d 1506, 1511 (9th Cir. 1993), *United States v.*

3

*Soliman,* 954 F.2d 1012 (5th Cir. 1992). In general, courts have been reluctant to depart pursuant to this provision. *United States v. Johnson,* 979 F.2d 396, (6th Cir. 1992); *Soliman,* 954 F.2d 1012. Any departure granted should be proportionate to the extent that the significantly reduced mental capacity contributed to the commission of the offense. *Cantu*, 12 F.3d at 1514. Moreover, even if the defendant committed the offense while suffering for a significantly reduced mental capacity U.S.S.G §5K2.13 provides that the court may not depart below the applicable guideline range if "...(2) the facts and circumstances of the defendant's offense indicate a need to protect the public because the offense involved actual violence or a serious threat of violence." U.S.S.G. 5K2.13

In this case the government advances that the defendant was not suffering from a significantly reduced mental capacity at that time he committed the offense. In addition, the government advances that even if the court found that a defendant in these circumstances committed the offense charged while suffering from a significantly reduced mental capacity, a departure below the guideline is not available because "the facts and circumstances of the defendant's offense indicate a need to protect the public because the offense involved...a serious threat of violence". Each issue is addressed independently.

4

**Significantly reduced mental capacity.**

The defendant did not have a significantly reduced mental capacity when he committed the crime. A significantly reduced mental capacity is defined in application Note 1 to § 2K5.13. It provides:

> "Significantly reduced mental capacity" means the defendant, although convicted, has a significantly impaired ability to (A) understand the wrongfulness of the behavior comprising the offense or to exercise the power of reason; or (B) control behavior that the defendant knows is wrongful.

As a result the question becomes whether the defendant, at the time he committed the crime, had a significantly impaired ability to (1) understand the wrongfulness of the behavior compromising the offense, (2) exercise the power of reason; or (3) control behavior that the defendant knows is wrongful. If any of the above 3 is met, the Court has the discretion to grant a departure if the other requirements of § 2K5.13 are met.

The government advances that, in this case, the defendant did not have a significantly impaired ability to understand the wrongfulness of his behavior (1 above), to exercise the power of reason (2 above) or to control behavior that the defendant know was wrongful (3 above). Each is addressed below.

**The defendant did not have a significantly impaired ability to understand the wrongfulness of his behavior.**

In this case the defendant did not have a significantly reduced mental capacity due to a significantly impaired ability to understand the wrongfulness of his behavior. Quite the contrary, in this case it is clear that the defendant understood and understands the wrongfulness of his behavior. Specifically, the defendant knew that at the time he committed the offense, his behavior was wrong. Defendant was first interviewed on August 1, 2002, by Special Agents Thomas Rice and Angel Martinez. (See 08/06/02 302 and handwritten statement of Kenneth West - attachment C). At the commencement of the interview West immediately began telling the agents about letters that he sent in an attempt to defraud individuals in the British and Spanish Governments. He then explained to the agents that he sent threatening letters to some of the same people that he had attempted to defraud. He admitted to mailing several letters (copies of letters mailed in attachment D) that contained white powder and admitted to placing them in the legal mail so that they would not be opened and intercepted by prison guards. He admitted that part of his plan in sending the threatening letters was so that the United Kingdom would charge him and he would be sent to the United Kingdom. Along these lines defendant had previously been convicted of mailing threatening communications to federal judges and had admitted that he did this in order to

6

be moved into the federal system. (Report of Shapiro, page 3). West also explained to the interviewing agents in 2002, and to government consulting psychologist Shapiro in 2005 that part of his plan was so that another individual in prison could report what he had done and receive a rule 35 sentencing reduction. (See 08//05/02 302, handwritten statement of Kenneth West and Shapiro report page 3.) Further in a search of his cell provisions of the very law that he was charged with were found (Attachment E). In addition copies of the statutory provisions addressing extradition were found (attachment F), which support his explanation that one reason he mailed the letter that is the basis for the conviction, and the other letters, was so that he would be extradited to the United Kingdom. Moreover, West wrote and sent two apology letters to Mr. Hugh Hunter, the British Vice Consel stationed in Tampa in which he admitted sending several letters and apologizing for sending the letters (attachment G). Finally, several articles dealing with terrorism threats were found. (Attachment H). All of these facts show that the defendant was aware that his behavior was wrong. (Also see the *United States vs. Craig David McCart*, 377 F.3d 874, 878(8th Cir. 2004) finding that the evidence showed that the defendant realized the defendant understood the wrongfulness of his behavior when he admitted his conduct to the police.)

7

**The defendant did not have a signficantly impaired ability to exercise the power of reason.**

The evidence in this case leads to the conclusion that the defendant did not have a significantly impaired ability to exercise the power of reason. In this case, as explained above, in his first statement to interviewing agents and in his written statement in 2002, and in his statements to government consulting psychologist Shapiro in 2005, the defendant clearly delineated several reasons as to why he sent the letters. One reason was to be extradited to the United Kingdom to serve time. Another reason was to help an inmate get a reduction in sentence pursuant to Rule 35. Although one may question whether the defendant in fact made a good decision in deciding to mail the threat at hand for those reasons, the statements evidence that he certainly exercised the power of reason when mailing the threat.

**The defendant did not have a significantly impaired ability to control behavior that he knew was wrongful.**

In this case there is also no evidence that the defendant was unable to control behavior that he knew was wrongful. Again, on the contrary, the facts of the case, including the letters and evidence seized from his cell, his statement to the interviewing special agents, and his statements to government consulting psychologist Shapiro show that his actions were deliberate, thought out and planned. Along these lines, in addition to all

of the evidence cited earlier, the government notes that also seized from his cell were address list of the entities to which he sent letters (attachment I).

Finally the mental evaluations in this case do on support a finding of a significantly reduced mental capacity. In the Pre-Sentence Investigation Report (hereinafter PSI) it states that since West's incarceration, he has been through twelve assessments due to suicide risks. The PSI reports that while incarcerated he has not been diagnosed with an mental illnesses. (See PSI report paragraph 56.) Further it is detailed in the PSI that on November 26, 1996, a mental competency exam was conducted and the defendant was found competent. (PSI report paragraph 56.)

More importantly, the defendant in this case has undergone two recent professional mental examinations. The first report was done by the defense consulting psychologist. This report in no way addresses the threshold question of whether the defendant was suffering from a significantly reduced mental capacity at the time he committed the offense. In his report he does cite defendant's history of mental health problems, including behavior which would include periodic, brief and reversible periods in which bizarre behavior, extreme mood, irrational impulses or delusional thoughts are exhibited which impact behavior, but the

9

report in no way links his mailing of the threats to his psychological problems or concludes that the defendant was suffering from a significantly reduced mental capacity.

The defendant was examined at the government's request by an independent psychologist, Dr. David L. Shapiro. Dr. Shapiro's report was filed on May 27, 2005. After a review of the Bureau of Prisons psychology records from 1994 to present, Shapiro notes that these records "reveal no indications of a serious illness." (Shapiro report page 2). Further, after review of these records, and among other things, a series of motions, the report of defense consulting psychologist Toomer, copies of evidence seized in West's cell, interview with psychology staff at the Bureau of Prisons familiar with West, and two interviews with Mr. West, Dr. Shapiro concluded that "it does not appear that, at the time of the offense, he was suffering from a significantly reduced mental capacity." (Shapiro report page 7).

**Defendant's crime involved a serious threat of violence and as such as such a downward departure under 5K2.13 is not applicable.**

Even if the court would found that the defendant had met his burden of proving that he was suffering from a "significantly reduced mental capacity" (which the government advances the defendant has not met) the defendant would not be eligible for a

10

downward departure under U.S.S.G. § 5K2.13.  That guideline, at the time the offense was committed, explicitly stated that

> the court may *not* depart below the applicable guideline range if (1) the reduced mental capacity was caused by the voluntary use of drugs or other intoxicants; (2) *the facts and circumstances of the defendant's offense indicate a need to protect the public because the offense involved actual violence or a serious threat of violence;* or 3) the defendant's criminal history indicates a need to incarcerate the defendant to protect the public.

U.S.S.G. § 5K2.13 (emphasis added).  (The government notes that this exemption is still present in the guideline today).

In this case the defendant was convicted of threatening to use a weapon of mass destruction in violation of 18 U.S.C. § 2332a(b).  Threatening to use a weapon of mass destruction is an offense that involves a serious threat of violence and as such a downward departure under this guideline is not applicable. Furthermore, an examination of the facts and circumstances in the present case leads to the conclusion that the defendant's crime of conviction involved a serious threat of violence. Specifically, on or about July 22, 2002, the defendant mailed to the Consul Division, Foreign and Commonwealth Office in the United Kingdom a letter containing white powder.  That letter read as follows:

> Dear Consul Desk Officer, This letter is to advise you that this letter is contaminated with anthrax!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!You have now been exposed to Anthrax!!!!!!I hope you all die in that office!!!!You people in that office are all a bunch of frauds!!!!You all need to die!!!!!!I hope to see

to it you people die a slow and painful death!!!This anthrax is very lethal,and deadly!!!!I want all of you people todie [sic]!!!I wish Hugh Hunter the British Vice-Consul in Orlando, Florida U.S.A. was there as well to die a slow death!!!!!!!!The British Government is not used to anthrax, so I know a lot of people in the U/K will become ill and could possibley [sic] die from it, hah, hah, hah, Die Fuckin [sic] peices ][sic] of shit!!! I am letting you know who I am because the British Government can not do anything to me!! I want you all to suffer, so please die in vain!!!!!!!!! As you are aware I am in a jail! I get out of prison in five years. So there is nothing you are your family can do to me!!So you know your sorry ass British goverment and your crown prosecuters (sic) are worthless!!!!Well that is all the time I have for you and your sorry British government, I hope you all die, die baby, die fubkin [sic] die !!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!  You are a dead fuckin [sic] Brit!!!!! yours truely,[sic] your judge, jury, executioner! your sentence is death!!!!!!!, Typed Kenneth R. West. Signed Kenneth R. West Social Security #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.  Die, die, die, die, die, die, die, die, die, die, die, die, die, die, die, die, die, die, die, die!!!Anthrax is gonna get you!!!!Anthrax is gonna get you! Anthrax is gonna get you!!!!!!!!!!! You are a dead mother fucker!!!!!!!Die Brits die!!!!!!!!!!!!! Bye for now!!!!!!!!!! Signed Kenneth R. West;

This letter was received by the British Foreign and Commonwealth Office on or about July 29, 2002 in London, England and the British authorities responded to receipt of the letter on that same day.  That response included the deployment of British authorities, including Metropolitan Police employees, members of the London Fire Brigade, and other emergency authorities to the area and the closing of portions of the British and Commonwealth Foreign Offices and portions of the public streets nearby. British Metropolitan Police Employees that are explosive experts

responded to the scene and transported the letter to a forensic laboratory where forensic experts ultimately tested and dealt with the letter to determine if it was anthrax. British authorities undertook a lengthy detailed police investigation and contacted U.S. law enforcement officials. (See attached statements of 6 British investigating authorities attachment J) That letter caused the substantial disruption of public, governmental, or business functions and services and caused the authorities to expend substantial resources responding to the receipt of this letter, including the substantial expenditure of funds. Furthermore, U.S. law enforcement authorities then undertook a lengthy, detailed, criminal investigation. Clearly, the letter mailed by West, when coupled with the powdery substance contained in the letter, was taken as a serious threat by both the British Government and the United States government. The sending of powder in the mail was undoubtedly perceived as a physically threatening act by those who were responding to the incident, as evidenced by the reactions of the security officials that responded to the letters and the British police investigating the incident. See *United States v. Guevara*, 2005 WL 1009772 (5h Cir. (Tex) May 2, 2005) upholding a district court's determination that the crime for which defendant was convicted, a 2332a violation, qualified as a crime of violence

under U.S.S.G. § 4B1.1.  U.S.S.G. § 4B1.2(a)(1) defines a crime of violence as an offense under federal or state law that is punishable by imprisonment for more than one year that...has as an element the use, attempted use, or threatened use of physical force against the person of another . . ."  A conviction such as this that qualifies as a crime of violence when adjudicating whether a defendant is a career offender would also qualify as a crime involving a serious threat of violence under this guideline.  As such, a downward departure under this guideline is not applicable.  Also, "[T]he Sentencing Commission has indicated that the policy for future cases will be to look to the particular facts and circumstances present in an individual defendant's offense when determining whether a § 5K2.13 departure is possible." *United States v. Allen,* 181 F.3d 104, 1999 WL 282674 at 2  (C.A.6 (Mich. 1999)) (unpublished).  Also see *United States v. Springer*, 108 Fed. Appx. 116, 2004 WL 1964513 (4th Cir, N.C.)))(unpublished) in which the court held, in similar circumstances that the sentencing court's finding that the offender was properly classified as a career criminal based on his third felony conviction foreclosed any argument that it was unnecessary to incarcerate him to protect the public under U.S.S.G. § 5K2.13

**CONCLUSION**

In conclusion, the Court does have the power to grant a downward departure pursuant to 5K2.13 if it finds, by a preponderance of the evidence at sentencing that a defendant committed the offense while suffering from a significantly reduced mental capacity. However, in this case the guidelines preclude a downward departure under guideline 5K2.13 if the defendant's offense of conviction indicate a need to protect the public because the offense involved a serious threat of violence. When a person commits a crime of violence, as the defendant did in this case, a reduction under this guideline is not applicable.

In this instance, the government advances that the defendant has not met his burden of showing that he committed the offense while suffering from a significantly reduced mental capacity. Furthermore, defendant's offense of threatening to use a weapon of mass destruction outside the United States did involve a serious threat of violence. As such, a downward departure pursuant to U.S.S.G. § 5K2.13 is not warranted and defendant's motion should be dismissed.

Respectfully submitted,

MARCOS DANIEL JIMENEZ
UNITED STATES ATTORNEY

By: /s/ William White
WILLIAM WHITE
ASSISTANT UNITED STATES ATTORNEY
FLORIDA BAR NO. 087204

99 N.E. 4TH STREET
MIAMI, FLORIDA  33132
TEL: NO. (305 )961-9145
FAX NO. (305) 536-4675
Email: William.White@USDOJ.GOV

By: *[signature]*
BRENDA SUE THORNTON
Special Bar # A5500900
U.S. DEPARTMENT OF JUSTICE
COUNTERTERRORISM SECTION,
CRIMINAL DIVISION
10TH and CONSTITUTION AVENUE, N.W.
WASHINGTON, DC. 20530
TEL: NO.  (202) 353-7951
FAX NO.  (202) 305-4901
Email: Brenda.Sue.Thornton@USDOJ.GOV

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was delivered by U.S. Mail and facsimile this 31st day of May, 2005 to Daniel Ecarius, Assistant Federal Public Defender, at 150 West Flagler Street, Suite 1700, Miami, Florida 33130 and hand-delivered to the office of Renee Moses-Gregory, United States Probation Officer, 300 NE 1st Avenue, Room 315, Miami, FL 33132-2126.

*[signature]*
WILLIAM WHITE
ASSISTANT U.S. ATTORNEY

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

# CASE NO. 04-20872-CV-GRAHAM

## ATTACHMENT TO DOCKET ENTRY: 44

# NOT SCANNED

- ☐ VOLUMINOUS (exceeds 999 pages = 4 inches)
- ☐ BOUND EXTRADITION PAPERS
- ☐ ADMINISTRATIVE RECORD (Social Security)
- ☐ STATE COURT RECORD (Habeas Cases)
- ☐ SOUTHERN DISTRICT TRANSCRIPTS
- ☐ LEGAL SIZE
- ☐ DOUBLE SIDED
- ☐ PHOTOGRAPHS
- **x** POOR QUALITY (e.g. hand written, legal size, light print, etc.)
- ☐ SURETY BOND (original or letter of undertaking)

# PLEASE REFER TO COURT FILE